**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Clifton, | No. CV-19-02091-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Connecticut General Life Insurance Company, | |
| Defendant. | |

Before the Court is Plaintiff Cynthia Clifton's Brief Regarding the Need for Discovery and its Scope (Doc. 42), as well as Defendant Connecticut General Life Insurance Company's ("Defendant" or "CGLIC") response in opposition. (Doc. 45.)  In this ERISA action, Plaintiff seeks to engage in "limited" discovery outside of the administrative record.  For the following reasons, Plaintiff's request will be denied.[1]

## I.    BACKGROUND

Plaintiff worked as a Licensed Practical Nurse for Cigna Corporation ("Cigna") for 23 years. (Doc. 1. ¶ 20.) She alleges that she became disabled on January 20, 2014. (*Id.* ¶ 21.) She was later determined to be eligible for long-term disability benefits by Life Insurance Company of North America ("LINA"), formerly a defendant in this case, which issued Cigna's group long-term disability policy.[2] (*Id.* ¶ 26.) Plaintiff's long-term disability

---

[1] Plaintiff has requested oral argument. Both parties have submitted legal memoranda and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); see also LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

[2] Following the initial grant of benefits, LINA terminated Plaintiff's long-term disability

benefits are not at issue in this case.

Cigna also provided a group life insurance policy to employees including Plaintiff. Plaintiff's policy provides $94,000 in life insurance coverage. (Doc. 42 at 2.) Although the Complaint alleges that LINA issued and funded the life insurance policy, (Doc. 1 ¶ 3), CGLIC asserts that it, in fact, issued and funded the policy. (Doc. 45 at 3-4.) Under the policy, an employee who meets the definition of "Totally Disabled" is eligible for a waiver of life insurance premium payments, deemed the "Life Insurance Waiver of Premium" benefit ("LWOP"). "Totally Disabled" is defined as "completely unable to engage in any occupation for wage or profit because of illness or injury."[3] (Doc. 1 ¶ 24.)

On November 20, 2015, for a period beginning July 20, 2014, Defendant initially granted Plaintiff's LWOP claim. (*Id*. ¶ 26.) Then, on June 29, 2017, Defendant terminated Plaintiff's LWOP benefit because it found that she did not meet the definition of "Totally Disabled"; specifically, Plaintiff "retain[s] the capacity to perform to [sic] sedentary level work." (*Id*. ¶ 35; Doc. 45-1 at 17.) Plaintiff timely appealed that decision. Her appeal included medical records, multiple reports, her own affidavit, and other materials. (Doc. 1 ¶¶ 37-44.)  The decision was upheld on January 11, 2018. (*Id*. ¶ 58; Doc. 45-1 at 37.)

Plaintiff then appealed for a second time, attaching additional medical and vocational evidence. (Doc. 1 ¶ 67.) The decision was again affirmed on February 6, 2019. (*Id*. ¶ 92.) As part of its review and final decision, Defendant obtained medical reviews from physicians N. Nicole Barry, M.D. and Siva Ayyar, M.D, both of whom were retained by third-party vendors.[4] (*Id*. ¶¶ 73-78.) Defendant also notified Plaintiff that she had exhausted her administrative levels of review and that she could file a civil lawsuit in

---

benefits on March 1, 2017. (Doc. 1 ¶ 29.) Plaintiff appealed that decision, and on January 11, 2018, LINA reversed and reinstated long-term disability benefits. (*Id*. ¶ 60.)

[3] This definition differs from that in the long-term disability policy, under which an employee is "disabled" if, "solely due to Injury or Sickness, he or she is unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience." (Doc. 45-2 at 3.)

[4] Plaintiff's brief also references a medical record reviewer named Kevin Smith, M.D. (Doc. 42 at 7.)

- 2 -

1  federal court.[5] (*Id.* ¶ 107.)

2      On March 29, 2019, Plaintiff filed her Complaint against various entities for

3  enforcement of the LWOP provision of the life insurance policy. (Doc. 1.) The parties have

4  since stipulated to replace LINA with CGLIC as the only remaining defendant in this case.

5  (Doc. 30.) Plaintiff argues that Defendant "operated under a structural financial conflict of

6  interest because it fully insured the Policy and administered Plaintiff's claim for the

7  [LWOP] benefit." (Doc. 1 ¶ 12.) She also states that "due to their extensive business

8  relationships with the disability insurance agency," the third-party vendors and retained

9  physicians "were not independent, not objective or impartial." (*Id.* ¶ 86.) Plaintiff seeks a

10  determination that that she is "Totally Disabled" and therefore entitled to coverage under

11  the life insurance policy. (*Id.* at 23.) The parties have now briefed the issue of whether to

12  permit Plaintiff to conduct discovery beyond the administrative record.[6] (Docs. 42, 45.)

13  **II.    LEGAL STANDARD**

14      As a general matter, Rule 26 of the Federal Rules of Civil Procedure permits

15  discovery that is "relevant to any party's claim or defense and proportional to the needs of

16  the case." Fed. R. Civ. P. 26(b)(1). In ERISA cases, however, discovery generally plays a

17  limited role because the primary goal of ERISA is "to provide a method for workers and

18  beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Boyd v.*

19  *Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (citation

20  omitted). The parties agree that the standard of review in this case is *de novo.* (Doc. 28.)

21  In an ERISA case involving *de novo* review, a court's task is to "evaluate whether the plan

22  administrator correctly or incorrectly denied benefits." *Opeta v. Nw. Airlines Pension Plan*

23  *for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (citation omitted). It does not

24  consider whether the decision was an abuse of discretion, but whether it was correct. *See*

---

25  [5] Prior to Defendant's final LWOP denial, the Social Security Administration (SSA)

26  approved Plaintiff's disability claim. The SSA Administrative Law Judge (ALJ) found, on

27  April 28, 2017, that Plaintiff was disabled as of February 10, 2016. (*Id.* ¶ 32.) Plaintiff
notified Defendant of the determination. (*Id.* ¶ 34.)

28  [6] The Court did not permit a reply brief. (Doc. 40.) Plaintiff has also filed two Notices of
Supplemental Authority in support of her brief. (Docs. 46, 47.)

1   *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).

2       The district court is limited to the administrative record in most ERISA cases under

3   *de novo* review. It may "exercise its discretion to consider evidence outside of the

4   administrative record '*only* when the circumstances *clearly establish* that additional

5   evidence is *necessary* to conduct an adequate de novo review of the benefit decision.'"

6   *Opeta*, 484 F.3d at 1217 (emphasis in original) (quoting *Mongeluzo v. Baxter Travenol*

7   *Long Term Disability Benefit Plan*, 46 F. 3d 938, 944 (9th Cir. 1995)). In *Opeta*, the Ninth

8   Circuit set forth a "non-exhaustive list of exceptional circumstances where introduction of

9   evidence beyond the administrative record could be considered necessary[.]"[7]  *Id.* These

10  circumstances include:

> [1] claims that require consideration of complex medical
> questions or issues regarding the credibility of medical experts;
> [2] the availability of very limited administrative review
> procedures with little or no evidentiary record; [3] the necessity
> of evidence regarding interpretation of the terms of the plan
> rather than specific historical facts; [4] instances where the
> payor and the administrator are the same entity and the court is
> concerned about impartiality; [5] claims which would have
> been insurance contract claims prior to ERISA; and [6]
> circumstances in which there is additional evidence that the
> claimant could not have presented in the administrative
> process.

20  *Id.* at 1217 (citing *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (4th

21  Cir.1993) (en banc)).

22      As courts have noted, there is "tension in the heart of *Opeta*." *Nguyen v. Sun Life*

23  *Assurance Co. of Canada*, No. 314CV05295JSTLB, 2015 WL 6459689, at *8 (N.D. Cal.

24  Oct. 27, 2015). On the one hand, *Opeta* describes a "restrictive" standard, under which

25  discovery beyond the administrative record may be allowed "only" in "limited" and

26  "exceptional circumstances." *Id.* (quoting *Opeta*, 484 F.3d at 1217). On the other, the

27

28  ――――――――――――――
[7] Although *Opeta* addressed admissibility of new evidence, it is generally recognized that
the case also pertains to limits on discovery. *See Nguyen*, 2015 WL 6459689, at *2.

"exceptional circumstances" described in *Opeta*—most notably "instances where the payor and the administrator are the same entity and the court is concerned about impartiality"—are situations that "arise frequently" in ERISA litigation. *Id.* Regardless, the existence of "exceptional circumstances" does not necessarily require the admission of new evidence. *See DeMarco v. Life Ins. Co. of N. Am.*, No. CV-19-02385-PHX-DWL, 2020 WL 906461, at *4 (D. Ariz. Feb. 25, 2020) ("the language in *Opeta* is permissive rather than mandatory").

## III.    DISCUSSION

Plaintiff seeks discovery in the form of "information about the medical reviewers and the third-party vendors retained by [Defendant] to evaluate her LWOP claim."[8] (Doc. 42 at 14.) She requests permission to serve written discovery requests in the form of interrogatories and requests for production. Although Plaintiff does not attach specific discovery requests, she identifies categories of discovery that she seeks.[9] (*Id.* at 14-15.) Plaintiff also requests to take three Rule 30(b)(6) depositions: two of the third-party vendors that retained the reviewing physicians, and one of Defendant's designee.

---

[8] Despite the parties' previous stipulation to substitute CGLIC in place of LINA as the one defendant in this case (Doc. 30), Plaintiff's brief refers to LINA throughout. (Doc. 42.) CGLIC acknowledges that it and LINA are "sister companies," but asserts that CGLIC issued and administered the policy at issue. (Doc. 45 at 3.) Although the Court need not fully resolve this discrepancy for purposes of the present order, it admonishes the parties to clearly state the relevant entities in any future briefing in in this case.

[9] These include: the "number of disability and/or LWOP claims in which LINA has retained its third-party vendors, Dane Street, MCMC and Genex, to hire medical professional(s) to perform medical records review(s);" "the total amount of money LINA has paid to its third-party vendors for medical records reviews in disability and LWOP claims"; "any documents and communications between LINA and its reviewing physicians/medical professionals, vocational consultants and its third party vendors"; "information related to the total number of times LINA's third-party vendors . . . have been retained by LINA to hire medical professionals to provide medical records reviews"; "financial documentation relating to the total amount of money LINA has paid separately to Dane Street, MCMC and Genex to provide medical records reviews in disability and/or LWOP claims"; "performance evaluations generated by LINA for its third-party vendors and their medical reviewers"; and "any guidelines and manuals" used in Defendant's evaluation. (Doc. 42 at 14-15.)

1    Defendant responds that there are no exceptional circumstances warranting discovery, and

2    that the requested discovery is not proportional to the needs of this case. (Doc. 45 at 8,

3    15.) The Court agrees with Defendant.

4         Plaintiff first argues that limited discovery is warranted "given LINA's long history

5    of self-dealing." (Doc. 42 at 8.) The Court does not agree that this allegation warrants

6    discovery in this case. Plaintiff argues that LINA, as opposed to CGLIC, the only remaining

7    defendant, has a history of self-dealing. (Doc. 45 at 2.) Further, as to the argument that

8    Defendant operated under a financial conflict of interest, *de novo* review eliminates the

9    need for discovery. The "question on *de novo* review is generally not *why* the insurer

10   reached the decision it did—whether from misanthropy, incompetence, or a miserly grip

11   on its funds. The *de novo* question is more direct; it is simply whether, given the

12   administrative record, the plaintiff was entitled to benefits." *Nguyen*, 2015 WL 6459689,

13   at *6 (citation and internal quotations omitted). Because an insurer's decision is

14   "completely irrelevant to the court's decision, discovery into [its] motivations is also

15   irrelevant." *Reynolds v. UNUM Life Ins. Co. of Am.*, No. 2:10CV2383 PHX/LO, 2011 WL

16   3565351, at *2 (D. Ariz. Aug. 12, 2011).

17        The Court notes that, in those cases permitting discovery under the "payor and the

18   administrator are the same entity" prong of *Opeta*, courts have relied on the fact that "a

19   structural conflict resulted in a plaintiff's inability to introduce evidence into the

20   administrative record." *Reynolds*, 2011 WL 3565351, at *2. *See also DeMarco*, 2020 WL

21   906461, at *3 ("[T]here may be a need to supplement the record in an ERISA case

22   involving de novo review where a structural conflict results in a plaintiff's inability to

23   introduce evidence into the administrative record.") (citation and internal quotation marks

24   omitted). Here, Plaintiff does not allege that the administrative record is incomplete due to

25   Defendant's structural conflict. As Defendant notes, "[f]ar from an undeveloped record,

26   the Court is faced with 6,000 pages of records, many of which [were] submitted by Ms.

27   Clifton's attorney on multiple levels of appeal."[10] (Doc. 45 at 10.) Instead, Plaintiff argues

28

---

[10] Defendant has disclosed the administrative record to Plaintiff, but has not yet filed it on

that she presented ample evidence on appeal, but that Defendant rejected it and improperly relied on "one-sided" opinions and reports. (Doc. 42 at 4.)  Plaintiff has not shown that these allegations warrant additional discovery. *See DeMarco*, 2020 WL 906461, at *3 (denying request to supplement where plaintiff "does not appear to allege that the administrative record was kept incomplete by LINA's structural conflict").

Plaintiff also alleges that Defendant's third-party vendors and their retained physicians are "operating under their own conflicts of interest and bias given their relationships with LINA's third-party vendors who retained them and the disability insurance industry." (Doc. 42 at 5.) Plaintiff argues that "[o]nly limited discovery into LINA's third-party vendors and these doctors['] relationships and credibility can shed light on their conflicts of interest and bias that directly resulted in LINA's denial." (*Id.* at 8-9.) Plaintiff further argues that the Court should permit additional discovery to "understand why [the reviewing physicians] rendered opinions that were so favorable to LINA." (*Id.* at 13.)

The Court finds that these allegations do not warrant discovery, either. Plaintiff seeks information related to Defendant's payments to third-party vendors and reviewing physicians. The Court acknowledges that, "lacking medical expertise of its own and forced to weigh conflicting expert medical opinions, [the Court] could conceivably benefit from additional evidence as to whether a medical review is sound." *DeMarco*, 2020 WL 906461, at *4. But the "mere fact that a physician receives compensation from a plan administrator for performing medical reviews is insufficient by itself to be probative of bias." *Polnicky v. Liberty Life Assurance Co. of Bos.*, No. C 13-1478 SI, 2014 WL 969973, at *2 (N.D. Cal. Mar. 5, 2014). Put simply, "[n]o one would expect such consultants to work for free." *Nguyen*, 2015 WL 6459689 at *8. Further, extrinsic discovery is permissible "only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision." *Opeta*, 484 F.3d at 1217. Plaintiff has not demonstrated as much here.

the case docket. (Doc. 41.)

The Court also agrees with Defendant that the "performance evaluations" that Plaintiff seeks are not warranted in this case. (Doc. 45 at 15.) As noted, in *de novo* review cases, the question for the district court is "simply" whether, "given the administrative record, the plaintiff was entitled to benefits." *Nguyen*, 2015 WL 6459689, at *6 (citing *Abatie*, 458 F.3d at 963). *See also Hancock v. Aetna Life Ins. Co.*, 321 F.R.D. 383, 392 (W.D. Wash. 2017) (performance reviews "are not relevant and proportional to the needs of" a *de novo* review ERISA case).  Further, Defendant asserts in its response that "[n]either CGLIC nor LINA gives performance reviews for non-employees." (Doc. 45 at 14.) Plaintiff has accordingly not met its burden of demonstrating that performance evaluations of Defendant's third-party vendors and medical reviewers are "*necessary* to conduct an adequate de novo review of the benefit decision." *Opeta*, 484 F.3d at 12171.

Plaintiff also seeks "statistical data regarding the percentage of time the medical professionals, retained by LINA's third-party vendors, found that an insured/claimant did not have limitations and they were not disabled." (Doc. 42 at 14.) The Court finds that these "batting average" statistics, as termed by Defendant, are not discoverable in this case. (Doc. 45 at 12.) The Court agrees that the "statistics regarding the relationship between [third-party vendors] and [the insurer] are not probative of bias." *Nolan v. Heald Coll.*, 745 F. Supp. 2d 916, 923 (N.D. Cal. 2010). Further, "the rate at which a medical reviewer finds a claimant to be disabled or not disabled is an imperfect proxy for bias because it fails to account for whether the medical reviewer's findings were correct." *DeMarco*, 2020 WL 906461, at *5. What is more, any utility in these statistics does not overcome with the policy of "keeping [ERISA] proceedings inexpensive and expeditious." *Gonda v. Permanente Med. Grp., Inc.*, 300 F.R.D. 609, 613 (N.D. Cal. 2014). The Court will not permit discovery of these materials.

The Court also notes that it finds this case to be distinguishable from the two cases cited in Plaintiff's Notices of Supplemental Authority. (Docs. 46, 47.) In *Coffou v. Life Ins. Co. of N. Am.*, No. CV-19-03120-PHX-DLR, 2020 WL 1502104 (D. Ariz. Mar. 11, 2020), the defendant's alleged conduct placed the case "outside the garden-variety 'structural

conflict of interest' scenario." *Id*. at *3. The plaintiff's allegations included that the defendant's medical experts "rendered opinions outside their area of expertise" and that the defendant "did not provide the SSA ALJ's decision, the SSA claims file, or Plaintiff's medical vocational, and lay witness evidence." *Id*. Those allegations are not present here. Plaintiff does, as in *Coffou*, argue in this case that LINA has a "long history of self-dealing." (Doc. 42 at 8.) That said, as previously noted and as CGLIC points out, Plaintiff's "arguments are so boiler-plate that she does not even discuss the correct insurance company." (Doc. 45 at 2.) Further, in *Jones v. Life Ins. Co. of N. Am.*, 457 F. Supp. 3d 751 (D. Ariz. 2020), the court permitted limited discovery because "LINA's history and Plaintiff's unchallenged representations about LINA's relationships with its vendors and their experts raises a concern whether LINA's structural incentive to minimize benefit payments distorts its obligation to fairly handle benefits claims resulting in its employment of vendors and experts who reliably do LINA's bidding." *Id*. at 755. Plaintiff, again, does not allege that the defendant in this case, CGLIC, engaged in such conduct. Also, *compare DeMarco*, 2020 WL 906461, at *3 (denying a request to conduct discovery when faced with allegations of LINA's structural conflict). For all of these reasons, the Court will not permit Plaintiff's requested discovery.[11]

## IV.   CONCLUSION

In most ERISA cases under a *de novo* standard of review, "additional evidence is not necessary for adequate review of the benefits decision." *Brown v. Life Ins. Co. of N. Am.*, No. CV-13-439-TUC-DCB, 2014 WL 11512601, at *2 (D. Ariz. Mar. 18, 2014) (citation omitted). Plaintiff has not demonstrated that "exceptional circumstances" warrant a different outcome in this case. *Opeta*, 484 F.3d at 1217. Accordingly,

**IT IS ORDERED denying** Plaintiff's Brief Regarding the Need for Discovery and its Scope (Doc. 42) to the extent that it seeks permission to pursue discovery.

///

---

[11] Defendant argues that discovery is not proportional to the needs of this case under Fed. R. Civ. P. 26(b). Given the Court's determination that discovery is not warranted for the reasons stated above, it need not reach this argument.

**IT IS FURTHER ORDERED** that the parties shall propose a schedule of the remaining deadlines in this case by no later than October 30, 2020.

Dated this 21st day of October, 2020.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge